FILED

2020 May-18  AM 11:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# ALABAMA MIDDLE DIVISION

| | | |
|---|---|---|
| Lacey Crawford, | ) | |
| | ) | |
| Plaintiff. | ) | Civil Action No.: |
| | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Waffle House, Inc. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Lacey Crawford, ("Plaintiff") by and through her undersigned counsel, and hereby files this Complaint against Waffle House, Inc. ("Defendant") and seeks redress for discrimination and retaliation suffered in Plaintiff's capacity as an employee of the Defendant. Plaintiff has been discriminated against by the Defendant on account of Plaintiff's gender in violation of **Title VII** of the Civil Rights Act of 1964, as amended, **42 U.S.C §§ 2000e _et seq,_** and any other cause(s) of action that can be inferred from the facts set forth herein and states the following:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §1331, and 28 U.S.C. §1343(a)(4) for Counts I, II, III, and IV.

2. Plaintiff also seeks to bring pendent claims pursuant to 28 U.S.C. § 1367 and this Court's judicial powers for Count V.

3. The unlawful employment acts and other acts alleged herein took place within the Middle Division of the Northern District of Alabama.

4. Venue is proper in this Court, the United States District Court for the Northern District of Alabama, pursuant to **Title 28, U.S.C. § 1391** and the Local Rules of the United States District Court for the Northern District of Alabama.

## PARTIES

5. Plaintiff Lacey Crawford, a female, is domiciled in the state of Alabama.

6. At all relevant times the Plaintiff was an "employee" of the Defendant under Title VII.

7. The Defendant is a foreign Corporation licensed to do business in the State of Alabama.

8. At all relevant times, Defendant was an "employer" under Title VII

9. Defendant employs over 15 employees and is subject to Title VII.

## COMPLIANCE WITH JURISDICTIONAL REQUIREMENTS OF TITLE VII

10. Plaintiff has complied with the jurisdictional requirements of Title VII that on to wit: Plaintiff caused a charge of discrimination in employment to be filed with the Equal Employment Opportunity Commission (hereinafter sometimes referred to as the "EEOC") in accordance with Section 705 of Title VII.

11. A Notification of Right to Sue letter was received and this Complaint has been filed within ninety (90) days of receipt of said Notification of Right to Sue. A copy of the notice is attached as Exhibit 1.

## GENERAL FACTS

12. Plaintiff began her employment with the Defendant on or about August 24, 2014.

13. Plaintiff was hired to work in the position of Management Trainee at a Springville, Alabama restaurant location.

14. On November 19, 2014 Plaintiff was promoted to Manager at the Springville location.

15. In April of 2015 Plaintiff was moved to the Pell City location under Ronald Boyles for a short time.

16. Defendant then shifted division managers around and Plaintiff worked under Michelle Brown until around June of 2015.

17. Plaintiff was then promoted to District Manager over the Leeds and Moody stores.

18. Plaintiff's Division Manager was Ronald Boyles.

19. Plaintiff's Area Vice President was Inman Dubberly.

## COUNT I
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.

### (Hostile Work Environment)

20. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-19 above, as if fully set out herein.

21. The Plaintiff is a female and a member of a protected class.

22. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. as Defendant has engaged in the practice of a hostile work environment against Plaintiff which male employees were not subjected to.

23. Around November of 2016 Ron Boyles called the Plaintiff "a piece of shit" after learning she had reported him to HR.

24. Around April of 2017 Mr. Boyles began pulling the Plaintiff into rooms with no cameras so that he could cuss, yell, and belittle the Plaintiff.

25. This conduct was common and happened on numerous occasions.

26. On one occasion Mr. Boyles pulled Plaintiff into a room at the Leeds store

with another female employee.

27. Mr. Boyles began screaming and cussing at Plaintiff.

28. Mr. Boyles then made everyone leave the room but the Plaintiff.

29. Plaintiff felt as if she could not leave the room and felt threatened.

30. He continued to yell, scream, cuss, berate, and verbally abuse the Plaintiff for two hours, this was a practice male employees were not subjected to.

31. Mr. Boyles was screaming at the Plaintiff for scheduling issues that arose while she was out of town in St. Augustine, Florida that she had no control over.

32. As a result of this incident Plaintiff developed panic attacks.

33. On or about November 8, 2018 Plaintiff was again called into a room at the Leeds store.

34. During this incident Plaintiff was accused of stealing money and was yelled and cussed at again, a practice that male employees were not subjected to.

35. Plaintiff did not steal any money nor does the Plaintiff believe an investigation was done into the baseless allegations made by Mr. Boyles.

36. Plaintiff asked for proof but was not given any.

37. Plaintiff knew the books were perfect as they had recently passed an audit.

38. Each store went through at least two audits per month.

39. Plaintiff has a good faith belief that the allegations were fabricated by Mr.

Boyles.

40. At this meeting Plaintiff was told that if she left she would be leaving in handcuffs.

41. Plaintiff felt physically threatened.

42. Plaintiff was not allowed to leave until she signed a document, that Mr. Boyles had drafted, admitting to stealing money.

43. Plaintiff felt she had no choice but to sign the document.

44. Plaintiff's panic attacks only got worse as a result of this incident.

45. Plaintiff was terminated on November 8, 2018.

46. Plaintiff was unable to complete her essential job function and the terms of her employment were altered due to the constant verbal and mental abuse, and physically threatening environment she was subjected to, which male employees were not subjected to.

47. The Defendant, through Ron Boyles as an employee, created a hostile work environment based on Plaintiff's sex that was severe and pervasive enough to alter the terms of her employment.

48. Plaintiff was unable to complete her job due to the stress, fear of verbal and mental abuse, and threat of physical harm to her person.

49. Defendant's discriminatory action(s) against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended,

were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States as such Plaintiff is entitled to punitive damages.

50. Plaintiff has suffered and continues to suffer, emotional distress, loss of self-esteem and other damages as a direct result of Defendant's unlawful discrimination.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

51. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-19 above, as if fully set out herein.

52. Around April of 2017 Plaintiff began to participate in a protected activity when she opposed an unlawful employment practice by reporting Ron Boyles to the HR hotline for harassment that he was subjecting her to that other male employees were not subjected to.

53. Shortly after reporting Mr. Boyles to the hotline for harassment the verbal, mental, and physically abusive behavior the Plaintiff was subjected to continued.

54. A few months before November of 2018 Plaintiff had gathered notes of incidents that she had been subjected to and witnessed regarding Ron Boyles harassment.

55. She had them written down on a piece of paper and left it in her office.

56. Upon returning to her office Plaintiff saw Ron Boyles standing with the paper in his hand and he yelled at the Plaintiff and asked why she was reporting him.

57. Immediately following this confrontation Mr. Boyles wrote up the Plaintiff for two incidents which did not occur.

58. Mr. Boyles told the Plaintiff "here you go report these" when he handed them to her, this was conduct he did not subject male employees to.

59. Mr. Boyles did not write the Plaintiff up until he learned she was going to report him to the HR hotline for harassment.

60. Mr. Boyles verbal, mental, and physical abusive behavior continued until November 8, 2018.

61. On November 8, 2018 Mr. Boyles accused Plaintiff of stealing money and reported her to his supervisors without any proof of missing money, a practice he did not subject male employees to.

62. Plaintiff asked for proof of missing money and none was given to her.

63. Plaintiff knew that the books were perfect as she had recently passed an audit.

64. Each store had at least two audits per month.

65. Plaintiff has a good faith belief that the allegations were fabricated by Mr.

Boyles.

66. At this meeting Plaintiff was told that if she left she would be leaving in handcuffs.

67. Plaintiff was not allowed to leave until she signed a document, that Mr. Boyles had drafted, admitting to stealing money.

68. Plaintiff felt she had no choice but to sign the document.

69. Plaintiff was terminated on November 8, 2018.

70. Plaintiff has a good faith belief that the above-mentioned actions were all a result of her reporting Mr. Boyles to the HR hotline for harassment.

71. This adverse employment action was a direct retaliation to Plaintiff reporting and attempting to report Mr. Boyles to the HR hotline for harassment.

72. None of the adverse employment actions and/or events described within above occurred until after the Plaintiff reported and attempted to report Mr. Boyles to the HR hotline giving a causal connection between the adverse employment actions or events and Plaintiff opposing an unlawful employment practice.

73. Defendant intentionally discriminated against Plaintiff by retaliating against her for opposing an unlawful employment practice.

74. Defendant's retaliatory action against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional

and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

75. Plaintiff has suffered and continues to suffer, emotional distress, loss of self-esteem and other damages as a direct result of Defendant's unlawful retaliation.

### COUNT III
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.

### (DISPARATE TREATMENT BASED ON GENDER)

76. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-19 above, as if fully set out herein.

77. The Plaintiff, a female, is a member of a protected class.

78. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. as Defendant has engaged in the practice of discrimination against Plaintiff.

79. While working with Mr. Boyles Plaintiff immediately noticed a difference in the way he treated male employees opposed to females.

80. Plaintiff described the atmosphere as Mr. Boyles being "buddy buddy" with the male employees.

81. Mr. Boyles would regularly hang out with male employees outside of work, a practice he did not do with female employees.

82. Specifically, Mr. Boyles would hang out with Joseph Scott and associates at bars and social venues.

83. Mr. Boyles held Plaintiff to a higher standard than male employees.

84. For instance, on October 31, 2017 Plaintiff was involved in a car wreck.

85. Her doctor told her that she could not work the following day.

86. Plaintiff called Mr. Boyles to inform him she would pick up a shift to make up for the missed shift on an off day, even though she was not required to do such.

87. Mr. Boyles told her if she did not show up to work the next day she would be terminated.

88. Mr. Boyles did not subject male employees to the same conduct.

89. In another instance Plaintiff caught the flu in January of 2018.

90. Mr. Boyles would not give Plaintiff time off and required her to come into work.

91. Following the Plaintiff catching the flu Joseph Scott caught it.

92. Joseph Scott was allowed time off while sick by Mr. Boyles.

93. Further, Plaintiff would be running good sales numbers and have perfect books, but Mr. Boyles would berate Plaintiff that it wasn't good enough, but would not subject males to that same conduct based on numbers and books that were not as good as Plaintiff's.

94. Around April of 2017 Mr. Boyles began pulling the Plaintiff into rooms with no cameras and yelling and cursing at her, this was a practice he did not subject male employees to.

95. On one occasion Mr. Boyles pulled the Plaintiff into a room at the Leeds store with another female employee, a practice he did not subject male employees too.

96. Mr. Boyles began screaming and cussing at Plaintiff a practice he did not subject male employees to.

97. Mr. Boyles then made everyone leave the room but the Plaintiff.

98. He continued to yell, scream, cuss, berate, and verbally abuse the Plaintiff for two hours, a practice he did not subject male employees to.

99. All of the above actions taken by Mr. Boyles as an agent of the Defendant were not actions he subjected male employees to.

100. On November 8, 2018 Plaintiff was accused of stealing and having books that were not correct.

101. On or about November 8, 2018 Plaintiff was terminated.

102. On one occasion Mr. Boyles had books that showed a shortage and he was not terminated.

103. The money for his books having a shortage was supposed to come out of his check but instead it came out of the Plaintiff's even though she had nothing to do with the shortage.

104. Males employees were not subjected the same treatment.

105. The Defendant, through its agents, discriminated against Plaintiff by subjecting Plaintiff to treatment that male employees were not subjected to, which is a violation of Title VII.

106. Defendant's discriminatory action(s) against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States as such Plaintiff is entitled to punitive damages.

## <u>COUNT IV</u>
## <u>VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.</u>
## <u>(DISPARATE TREATMENT BASED ON SEXUAL ORIENTATION)</u>

107. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-19 above, as if fully set out herein.

108. The Plaintiff, based on her sexual orientation, is a member of a protected class.

109. The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. as Defendant has engaged in the practice of discrimination against Plaintiff.

110. Around the beginning of 2018 Mr. Boyles told the Plaintiff he did not understand why she would want to live that way in reference to her sexual orientation.

111. Mr. Boyles in the same conversation then told the Plaintiff he would not have hired her if he had known about her sexual orientation.

112. A few months after Plaintiff reported Ron Boyles to the hotline Mr. Boyles pulled Plaintiff into a room at the Leeds store with another female employee, a practice he did not subject traditional sexually oriented employees to.

113. Mr. Boyles began screaming and cussing at Plaintiff a practice he did not subject traditional sexually oriented employees to.

114. Mr. Boyles then made everyone leave the room but the Plaintiff.

115. He continued to yell, scream, cuss, berate, and verbally abuse the Plaintiff for two hours.

116. On or about November 8, 2018 Plaintiff was again called into a room at the Leeds store.

117. During this incident Plaintiff mentioned that she had reported Joseph Scott

for stealing and had told Mr. Boyles.

118. Mr. Scott has a traditional sexual orientation.

119. Mr. Scott was not held in a room and verbally, mentally, or physically abused.

120. Plaintiff is aware of only one other employee that Mr. Boyles terminated.

121. The employee was Wendy Bright and she does not have a traditional sexual orientation.

122. Members of a traditional sexual orientation were not subjected to the same treatment for the same alleged conduct as the Plaintiff as shown above.

123. All of the above actions taken by Mr. Boyles as an agent of the Defendant were not actions he subjected traditional sexually oriented employees to.

124. On or about November 8, 2018 Plaintiff was terminated.

125. The Defendant, through its agents, discriminated against Plaintiff by subjecting Plaintiff to treatment that traditional sexually oriented employees were not subjected to, which is a violation of Title VII.

126. Defendant's discriminatory action(s) against Plaintiff in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States as such Plaintiff is entitled to punitive damages.

## COUNT V

## FALSE IMPRISONMENT

127. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-19 above, as if fully set out herein.

128. On November 8, 2018 Plaintiff was called into a room outside of the restaurant in Leeds.

129. The room is a shed located behind the building.

130. Once inside Plaintiff was joined by Ron Boyles, Meyori Brown and Inman Dubberly.

131. Plaintiff was accused of stealing money.

132. Plaintiff adamantly denied these accusations.

133. Plaintiff knew that the books were perfect and showed no money missing as an audit was recently passed.

134. Plaintiff has a good faith belief that Mr. Boyles made a baseless accusation that the books were incorrect and accused Plaintiff of stealing money.

135. Plaintiff has a good faith belief that no investigation into the matter was conducted.

136. In the meeting Plaintiff was asked how "are you in financial trouble."

137. Plaintiff responded that she was "doing the best she ever had."

138. At this point Mr. Boyles laughed and said "see."

139. Plaintiff was told that if she walked out of the meeting it would be in handcuffs.

140. Plaintiff was held in the room against her will constituting an unlawful seizure.

141. Plaintiff was told that if she tried to leave she would be taken to jail.

142. Plaintiff was not allowed to leave the room for the entire duration of the meeting.

143. Plaintiff felt physically threatened.

144. Plaintiff was only allowed to leave after she was forced to sign a document, that Mr. Boyles drafted, admitting to missing money.

145. She felt as if this was the only way she would be allowed to leave the room.

146. Plaintiff suffered a panic attack during the course of this false imprisonment.

147. The Defendant, by and through its agents, falsely imprisoned the Plaintiff by unlawfully detaining Plaintiff against her will.

148. As a direct and proximate result of Defendants actions Plaintiff suffered a loss of her freedom, physical discomfort, inconvenience, and resulting injury to Plaintiff's mental health.

## <u>PRAYER FOR RELIEF FOR ALL COUNTS</u>

**WHEREFORE,** Plaintiff prays that this Honorable Court will:

A. A declaratory judgment, declaring the Defendant's past practices herein complained of to be unlawful.

B. Order Defendant to institute and carry out policies, practices, and programs providing equal employment opportunities for Plaintiff and other employees and eradicating the effects of its past and present unlawful employment practices.

C. Order the Defendant to make whole the Plaintiff by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices and false imprisonment described above, including, but not limited to emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, punitive damages, and inconvenience, in amounts to be determined at trial.

E. Grant such further relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

The Plaintiff demands trial by jury.

Respectfully submitted,

/s/ *D. Jeremy Schatz*
D. Jeremy Schatz
ASB-2400-H34Y
*Attorney for Plaintiff*

OF COUNSEL:
The Patton Firm
3720 4th Avenue South
Birmingham, AL 35222
Phone: (205) 933-8953
Fax: (205) 449-4897
jschatz@thepattonfirmal.com

### Defendant served via waiver of service of summons form 1B:

Waffle House, Inc.
C/O Corporation Service Company Inc
641 South Lawrence Street
Montgomery, Al 36104

# Exhibit 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 212-2100
FAX (205) 212-2105
Website: www.eeoc.gov

Ms. Lacey Crawford
c/o Jeremy Schatz, Esq.
The Patton Firm
3720 4th Avenue South
Birmingham, AL 35222

Re:     Charge Number 420-2019-02954
        *(Lacey Crawford v Waffle House)*

Dear Ms. Crawford:

This letter is sent regarding the above referenced charge of discrimination which you originally filed with the Equal Employment Opportunity Commission ("EEOC") on March 29, 2019.  You will recall that the employer's response to your allegations was provided to you on November 14, 2019.  You provided a response to the position statement. We wanted to follow-up with you to advise you that based on an analysis of the material and testimony obtained during the investigation, the Commission has concluded that it is unlikely that additional investigation will result in a finding that the law was violated, as alleged.

In order to establish a violation on a Harassment issue, the evidence must show in the following order of proof: 1) Charging Party belongs to a protected group; 2) Charging Party has been subjected to objectionable or offensive treatment by co-workers having the effect of embarrassing, ridiculing, tormenting, bothering or coercing Charging Party because of Charging Party's group; 3) Charging Party made Respondent aware of the harassment or Respondent's management should have known through reasonable observation; 4) In spite of objectionable or offensive atmosphere, Respondent took no corrective action; and 5) Respondent cannot explain its lack of corrective action or the explanation is in fact pretext for discrimination.

In order to establish a violation on a Discharge issue, the evidence must show in the following order of proof: 1) Charging Party belongs to a protected group; 2) Charging Party was discharged; 3) Others similarly situated but not of Charging Party's group were not discharged; and 4) Respondent cannot explain the difference in treatment or Respondent's explanation is in fact pretext for discrimination.

Evidence shows that your March 2017 harassment complaint, occurred outside the (180) day of the date you filed your charge of discrimination with the Commission. Evidence does not show that Respondent discharged you because of your sex or in retaliation for your March 2017 harassment complaint.

Although the evidence of record does not suggest a violation of any law enforced by the Commission, a *Dismissal and Notice of Rights* is enclosed.  This document gives you the opportunity to pursue the case in federal district court should you disagree with the Commission's determination.  If you decide to pursue the case in federal court, you must do so within ninety (90) days from the date of your receipt of the *Dismissal and Notice of Rights.*

If you have any questions, or require additional information do not hesitate to contact me by e-mail at michael.cochran@eeoc.gov or by telephone at (205) 212-2114.

FEB 1 4 2020

_____
Date Mailed

Sincerely,

Michael Cochran
Federal Investigator

**1 | Page**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Lacey Crawford
800 Maple Trace
Odenville, AL 35120

From: Birmingham District Office
Ridge Park Place
1130 22nd Street
Birmingham, AL 35205

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2019-02954 | MICHAEL COCHRAN,
Investigator | (205) 212-2114 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

Enclosures(s)

On behalf of the Commission

**BRADLEY A. ANDERSON,**
District Director

FEB 1 4 2020

*(Date Mailed)*

cc: WAFFLE HOUSE
c/o Valencia Porter
VP & Employment Counsel
Post Office Box 6450
Norcross, GA 30091

Jeremy Schatz, Esq.
THE PATTON FIRM
3720 4th Avenue South
Birmingham, AL 35222

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**  --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**  --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**  --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**  --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 420-2019-02954 |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Lacey Crawford | (205) 705-9289 | 9/6/91 |

| Street Address | City, State and ZIP Code |
|---|---|
| 800 Maple Trace | Odenville, AL 35120 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Waffle House | 15+ | (205) 640-4579 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2140 Moody Pkwy | Moody, AL 35004 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Waffle House | 15+ | (205) 699-5300 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1850 Ashville Rd | Leeds, AL 35094 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 11/16      Latest Nov 8, 2018

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See Exhibit A.

RECEIVED

MAR 29 2019

U.S. EEOC
Birmingham District Office

RECEIVED

MAR 29 2019

U.S. EEOC
Birmingham District Office

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 3-29-19        Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Exhibit A

1. My name is Lacey Crawford and I am over the age of 19 and a resident of Alabama.
2. I began working for Waffle House in 2014.
3. Two years ago, I had to report my supervisor, Ron Boyles, to HR for drug use. Nothing was done. The reporting line is supposed to be anonymous, but I believe he became aware of me reporting these issues.
4. Six months later in March of 2017 I had to report him for harassment. Nothing was done. The reporting line is supposed to be anonymous, but I believe he became aware of me reporting these issues.
5. A few months ago, Ron pulled me into a room with another female employee.
6. He proceeded to yell and cuss at me, he never does things like this to male employees.
7. He then made everyone leave except me and him.
8. He continued to yell and cuss at me for two hours.
9. On November 8, 2018 I was again called into a room.
10. This time Ronnie Inman, the area Vice President, Ron Boyles and Meyori Brown, the people director were in the room.
11. I was again yelled and cussed at and accused of stealing money.
12. However, the books were perfect and showed no money missing.
13. I believe Ron reported this money missing to Ronnie Inman and Meyori Brown and they did not investigate themselves to see if the money was actually missing.
14. I was told that if I left the meeting it would be in handcuffs. This made me feel as if I had no choice but to stay.
15. I was only allowed to leave after I signed a document acknowledging the missing money, even though I do not believe any money was missing. I signed this document because I felt like I was falsely imprisoned in this room.
16. As a result of these incidents I had panic attacks.
17. I was terminated on November 8, 2018.
18. I believe that I have been subjected to a hostile work environment and discrimination based on my sex and subject to retaliation for reporting Ron Boyles for harassment, all of which are violation of Title VII of the Civil Rights Act.
19. I declare under penalty of perjury that the forgoing is true and correct.
20. I authorize the EEOC to release the contents of this Charge of Discrimination to the Respondent.

Done this _____ day of _____ 2019.

_____
Lacey Crawford

RECEIVED

MAR 2 9 2019

U.S. EEOC
Birmingham District Office

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.